NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1625
_____

UNITED STATES OF AMERICA

v.

BERNARD J. BAGDIS,
a/k/a Pat Davis,
a/k/a Frank Benjamin,
a/k/a Adam Samuels,
a/k/a Chris White,
a/k/a Jay

Bernard J. Bagdis,

Appellant

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2:07-cr-00730)
District Judge: Hon. J. Curtis Joyner
_____

Submitted Under Third Circuit L.A.R. 34.1(a),
March 27, 2012

BEFORE: FUENTES, SMITH, and JORDAN *Circuit Judges*

(Opinion Filed: July 18, 2012)
_____

OPINION OF THE COURT
_____

1

FUENTES, *Circuit Judge*.

Bernard J. Bagdis appeals his conviction and sentence for tax evasion, conspiracy to defraud the United States, and violation of related tax provisions. He contends, *inter alia*, that the District Court erred by denying him a hearing pursuant to *Kastigar v. United States*, 406 U.S. 441 (1972), and committing various procedural errors at sentencing. For the following reasons, we will substantially affirm the District Court but will vacate and remand for resentencing.

## I.

Because we write only for the parties, we recount only those facts necessary to our decision. Bernard Bagdis, a lawyer, believed that he had unlocked the secret to avoiding all federal income taxes. Through his law practice, he worked with clients to put his theories into practice. Bagdis' strategy was to, as one of his associates testified, hide his clients in plain sight. In other words, he would sever any link between an individual's Social Security number and income they earned, often by having their income made payable to a corporation they controlled rather than to themselves. He sought to make it difficult for the Internal Revenue Service ("IRS") to trace the flow of his and his client's monies by creating convoluted corporate transactions. Bagdis himself had not filed an income tax return since 1990, despite earning substantial income.

In 2002, the Office of the U.S. Attorney for the Eastern District of Virginia subpoenaed Bagdis to testify regarding a loan Tidal Financial Corporation made to a Virginia elected official. On September 20, 2002, Bagdis and the U.S. Attorney's Office entered into an immunity agreement. Bagdis agreed to testify about the transaction and

2

in exchange, the government agreed that it would "not provide information received from [Bagdis] to other prosecuting offices or agencies for the purpose of criminal prosecution upon compliance with this agreement." App. at A-293. He was also granted "full production immunity" and was "afforded protection that [was] coextensive with, and no less than, formal statutory use immunity" codified at 18 U.S.C. § 6002. *Id.* Bagdis met with the FBI and provided information about the transaction on September 26, 2002. He also provided them documents regarding the transaction. Bagdis alleged that these documents demonstrated that Administar Corporation, a corporation he controlled, was involved in the transaction and that Bagdis used fake names to execute it. Bagdis may have been interviewed again in February 2003.

In the spring of 2003, the IRS, working with prosecutors from the Officer of the United States Attorney for the Eastern District of Pennsylvania, sent two undercover agents to meet with Bagdis, pose as potential clients interested in avoiding federal taxation, and record their conversations. On August 21, 2003, without prompting, Bagdis revealed to the undercover agent that he was subpoenaed to appear before a grand jury and testified pursuant to a grant of immunity. *See* App. at A-457-58. Initially, the government believed that Bagdis had fabricated this story, but reached out to other law enforcement officers to check its veracity. Shortly thereafter, the federal prosecutors in the Eastern District of Virginia confirmed that they had granted Bagdis immunity. According to contemporaneous e-mail records, the government attorneys in Virginia did not reveal any of the information that Bagdis had given them to the Pennslyvania ones. *See* App. at A-839. The U.S. Attorney's Office in Pennsylvania designated the Deputy

Chief of the Criminal Division as a "taint" attorney "to ensure that [the] prosecutors and investigators [were] not exposed to any information relating to Bagdis' dealings with [the U.S. Attorney's Office for the Eastern District of Virginia]." *Id.* at A-837. Bagdis continued to talk with the undercover agents and revealed substantially the information he now claims is immunized. For example, Bagdis revealed to the undercover agent that he used Administar Corp. to "manage cash flow for [his] various business clients." *Id.* at A-507.

On October 18th, 2004, the government sought and a Magistrate Judge approved a search warrant of Bagdis' offices and homes. In the affidavit of probable cause, the affiant indicated being aware of the Virginia investigation and the grant of immunity but swore under penalty of perjury that no information had been shared with her. The search warrant was executed on October 20, 2004.

Bagdis was indicted on multiple counts of tax fraud and other various tax offenses. On June 17, 2008, a superseding indictment was filed. It charged Bagdis with one count of attempting to obstruct administration of the Internal Revenue Code, in violation of 26 U.S.C. § 7212(a); seven counts of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; twenty counts of aiding and assisting the preparation of false tax returns in violation of 26 U.S.C. § 7206(2);five counts of failure to file tax returns or supply information in violation of 26 U.S.C. § 7203; six counts of failure to file currency transaction reports in violation of 31 U.S.C. § 5322; and aiding and abetting, in violation of 18 U.S.C. § 2.

4

After a lengthy trial where Bagdis testified, a jury found him guilty of one count of attempting to obstruct the administration of the Internal Revenue Code; seven counts of conspiracy to defraud the United States; eight counts of aiding and assisting in the preparation of false tax returns; three counts of failure to file tax returns or supply information; and five counts of failure to file currency transaction reports by a business.

At sentencing, the District Court determined that Bagdis' offense level was 32 with a criminal history category of I. The Guideline range was 121 months to 151 months. After lengthy argument and submissions from both sides, the District Court applied the 2-point perjury enhancement pursuant to § 3C1.1 of the United States Sentencing Guidelines. The government asserted that there were seven bases for applying the enhancement. Specifically, it asserted the following testimony constituted one such example: "Q: Were you hiding anything from the IRS. A: No. Q: Did you create any corporations to hide yourself or any other person from the IRS. A: No." App. at A-1684. Bagdis, by contrast, told an undercover agent, posing as a potential client, that he would create corporate transactions so complex and convoluted that the IRS would not be able to figure them out and the client would be able to hide his money in plain sight. App. at A-1287. His associate also testified that Bagdis' "operating procedure" was to "set up [a] corporation to remove the income being linked or reported under [a client's] name and Social Security number." App. at 1173. Based in part on the above testimony, the District Court found that "the record [was] replete with testimony and evidence to show that, in fact, his efforts were significantly to conceal information relating to income from the Internal Revenue Service for the number of [co-]conspirators that he was

5

involved [with]." App. at A-2592-93. It did not make specific findings as to the elements of perjury.

Initially, the District Court sentenced Bagdis to 120 months' imprisonment for attempting to obstruct the administration of the Internal Revenue Code with the rest of the twenty-six counts to run concurrently with that charge. After the conclusion of the hearing, counsel informed the court that this exceeded the statutory maximum. The District Court heard brief argument about the appropriate sentence in light of this change and resentenced him. The District Court sentenced Bagdis to a total term of 120 months: 36 months for attempting to obstruct the administration of the Internal Revenue Code; 42 months each for two counts of conspiracy to defraud the United States to run consecutively to each other. Bagdis was sentenced to 30 months on the rest of the counts to run concurrently.[1]

II.

A.

Bagdis contends that the District Court erred when it denied his motion to dismiss the indictment for a violation of *Kastigar* without an evidentiary hearing. He contends that he was entitled to an evidentiary hearing where the government bears the burden of proof once he showed he testified under an immunity agreement. We disagree.

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

We review a district court's denial of a *Kastigar* hearing for an abuse of discretion.[2] *United States v. Lacey*, 86 F.3d 956, 973 (10th Cir. 1996); *United States v. Montoya*, 45 F.3d 1286, 1291 (9th Cir. 1995); *United States v. Dynalectric Co.*, 859 F.2d 1559, 1580 (11th Cir. 1988).

As the Supreme Court made clear in *Kastigar*, the protection against the use of immunized testimony or its derivatives reflects "a rational accommodation between the imperatives of the [Fifth Amendment privilege against compulsory self-incrimination] and the legitimate demands of government to compel citizens to testify." *Kastigar*, 406 U.S. at 445-46. If a person is given so-called use and derivative-use immunity and then is subsequently prosecuted, he is protected beyond "the integrity and good faith of the prosecuting authorities." *Id.* at 460. In fact, "[o]nce a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence."[3] *Id.* (internal quotation marks omitted).

---

[2] While this Court has yet to address the proper standard of review, we are convinced by the holdings of our sister circuits that abuse of discretion is the proper standard. Furthermore, the decision whether to hold a *Kastigar* hearing is akin to a decision whether to hold a hearing on a motion to suppress. It is well established that we apply an abuse of discretion standard to such motions. *See United States v. Hines*, 628 F.3d 101, 104 (3d Cir. 2010).

[3] Bagdis contends that to shift the burden to the government, he must only demonstrate that he provided testimony under a grant of immunity. Our sister courts have taken varying approaches. Some hold that the burden will only shift once the defendant shows that he gave immunized testimony on matters relating to the federal prosecution. *See United States v. Blau*, 159 F.3d 68, 72 (2d Cir. 1998) ("In the typical case, [a defendant's]

7

After thoroughly reviewing the full record, we find that the District Court did not abuse its discretion when it declined to hold a hearing and determined that the government met its burden of demonstrating the government acquired its information independently of any immunized testimony. The government submitted contemporaneous e-mails which show that the government was unaware of the Virginia investigation until Bagdis revealed it and that the prosecuting office then immediately established a wall around itself. It never looked at the FBI report detailing the information Bagdis revealed to the Virginia U.S. Attorney's Office. Bagdis presents no evidence which calls this into question or raises a factual dispute that would normally warrant a hearing. This strong, undisputed evidence of a lack of taint coupled with Bagdis' independent revelations to the undercover agents, was sufficient to satisfy the government's burden. The District Court did not err when it denied Bagdis' *Kastigar* motion without a hearing.

B.

Bagdis contends the District Court made a host of procedural and substantive errors on sentencing. Specifically, he alleges the District Court procedurally erred when

---

failure to show the requisite factual relationship would be sufficient to end the inquiry and avoid the necessity of a *Kastigar* hearing."); *United States v. Serrano*, 870 F.2d 1, 15 (1st Cir. 1989). While others shift the burden when a defendant demonstrates he testifies under a grant of immunity, without necessarily inquiring into the subject matter of that testimony. *United States v. Cozzi*, 613 F.3d 725, 728 (7th Cir. 2010); *United States v. Streck*, 958 F.2d 141, 144 (6th Cir. 1992). Because we find that the government has met its burden of establishing an independent and legitimate source for the disputed evidence, we do not need to decide what standard would apply and assume that Bagdis has satisfied it.

8

it presumed the guidelines to be reasonable, was mistaken about the statutory maximum sentence, and failed to give meaningful consideration to all the § 3553(a) factors.

"When reviewing a sentence, [this Court] must ensure that the District Court committed no significant procedural errors, such as failing to calculate (or improperly calculating) the Guideline range." *United States v. Cespedes*, 663 F.3d 685, 688 (3d Cir. 2011) (internal quotation marks omitted). Our review of procedural errors is for an abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). In assessing procedural errors, we first look to whether the district court properly calculated the applicable Guideline ranges. *Id.* After ruling on any motions to depart that affect the guideline and allowing the parties to present argument, the court must consider all of the § 3553(a) factors and determine the appropriate sentence to impose. *Id.* In determining whether a district court gave "meaningful" consideration to the factors, we look to "whether the district judge imposed the sentence he or she did for reasons that are logical and consistent with the factors set forth in section 3553(a)." *Id.* at 568.

Bagdis' procedural arguments are without merit. A close review of the record shows that the District Court did not presume the guidelines to be reasonable, but instead a starting point, and it carefully considered all the § 3553(a) factors. Bagdis contends the District Court erred in failing to consider nationwide sentencing disparities. Specifically, he argues he should have been sentenced in conformity with defendants engaged in a tax shelter conspiracy at Ernst & Young. These defendants received 36 months' imprisonment. As the District Court noted at sentencing, there are differences between these defendants and Bagdis that warrant a higher sentence for Bagdis. For example,

Bagdis was the apex of this conspiracy while the Ernst & Young defendants, while leaders, were not *the* leader. Ultimately, simply because the District Court reasonably rejected defense counsel's arguments does not mean the District Court did not give meaningful consideration to the § 3553(a) factors or adequately state his reasons. In explaining its sentence, the Court did just that. Although we might have imposed a different sentence if faced with the same information, it does not follow that the District Court committed an abuse of discretion.

Bagdis also contends that the District Court procedurally erred when it applied the two-point perjury enhancement. Whether a defendant committed perjury is a factual question and "cannot be set aside unless it [is] clearly erroneous." *United States v. Johnson*, 302 F.3d 139, 154 (3d Cir. 2002).

It is always preferable that a district court make specific findings as to each element of perjury. In *United States v. Gricco*, 277 F.3d 339 (3d Cir. 2002), however, we held that it was not error when the District Court failed to make express findings of the elements of perjury[4] because "application of the enhancement necessarily included findings on the elements and that the findings were supported by the record." *Id.* at 362. The defendant's "flat denials" about elements of the crime he was convicted of was sufficient to find that he had willfully intended to provide false testimony and the

---

[4] A witness testifying under oath commits perjury when he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)

10

untruths were material. *Id.* (citing *United States v. Boggi*, 74 F.3d 470, 479 (3d Cir. 1996)).

Here, Bagdis was asked whether he intended to defraud the IRS, Supp. App. at 2, and whether he "creat[ed] any corporations to hide [himself] or any other person from the IRS," all of which he flatly denied, App. at A-1684. The evidence in the record, such as Bagdis' statements to undercover agents that he created complex and convoluted transactions to "hide in plain sight" from the IRS, App. at A-1287, and his associates' testimony that Bagdis set up his scheme to allow a client to "earn his money through his corporation and evade paying the taxes on any of his income and not jeopardize it with the liens that were on the other company," App. at A-1162, demonstrate that this testimony was willfully false. There is no other conclusion to be drawn from Bagdis' own statements and those of his co-conspirators than that he fully intended to hide himself and his clients from the IRS.[5] Thus, we cannot say that the District Court's application of the enhancement was clearly erroneous.[6]

---

[5] We have previously determined that responses to "fundamentally ambiguous" questions cannot justify the application of the obstruction of justice enhancement. *See United States v. Miller*, 527 F.3d 54, 77 (3d Cir. 2008). In *Miller*, we found that a defendant's negative response to the question of whether he possessed "sadomasochistic" images insufficient for the enhancement because the definition of sadomasochistic was both "context-specific and contested." *Id.* At 78. By contrast, whether Bagdis intended to "hide" from the IRS is an unambiguous question, as was his response and the evidence that suggested otherwise.

[6] Judge Smith is of the view that the perjury enhancement under Section 3C1.1 should not have been imposed as the District Court's findings focused on Bagdis's conduct and intent, rather than his trial testimony. He acknowledges that express findings are not required if false testimony is obvious from the record. *Gricco*, 277 F.3d 339, 362 (3d Cir. 2002). In this case, Judge Smith believes that it cannot be readily discerned from the

11

When imposing the sentence, the district court, without objection from counsel, sentenced Bagdis to ten years on count 1, believing it to be the statutory maximum for the charge, with the rest of the counts to run consecutively. When the error was brought to the court's attention, it heard additional argument on why it should impose a different sentence. After considering the argument, it imposed a three year sentence on count 1 to run consecutively with the other counts, which was within the correct statutory maximum. This was not in error.

However, it is uncontested before us that the District Court did err when it imposed 42 months' imprisonment for aiding and assisting others in the filing of false returns in violation of 26 U.S.C. § 7206(2). The statutory maximum for such a violation is 36 months' imprisonment. 26 U.S.C. § 7206. The District Court further erred when it imposed 36 month's imprisonment on each failure to file count, which exceeded the statutory maximum of 12 months, s*ee id.* § 7203. The District Court also imposed a fine based on the erroneous belief that Bagdis was found guilty of 29 violations, when he was only found guilty of 27 and imposed an incorrectly calculated special assessment. Though counsel did not object at the time of sentencing, we find that these constitute plain error. *United States v. Lewis*, 660 F.3d 189, 192 (3d Cir. 2011). Sentencing a person to a term of imprisonment beyond what is allowable under the law unquestionably is a plain error that "seriously affect[s] the fairness, integrity [and] public reputation of

record what testimony was false. Although Bagdis's flat denial in response to an inquiry about hiding from the IRS is cited as the basis for the perjury enhancement, Judge Smith views that denial as insufficient to sustain the enhancement in the absence of a more precisely tailored question, and given the explanation by Bagdis that each corporation he created was tied to an address, and in several instances, his office.

judicial proceedings." *See United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks omitted).  Thus we will vacate the judgment and sentence and remand for resentencing to correct these errors.

III.

We have considered Bagdis' remaining arguments and after a careful review of the record, find them without merit.  Though we substantially affirm the District Court's judgment and sentence, we will vacate and remand for further proceedings consistent with this opinion.